Present: Compton, Stephenson, Lacy, Hassell, Keenan, and Koontz, JJ., and Whiting, Senior Justice

CHARLES E. SMITH MANAGEMENT, INC.
                              OPINION BY JUSTICE LAWRENCE L. KOONTZ, JR.
v.  Record No. 950266              March 1, 1996

DEPARTMENT OF TAXATION OF THE COMMONWEALTH OF VIRGINIA, ET AL.

FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
William T. Newman, Jr., Judge

In this case, we determine the validity of a tax assessment imposed pursuant to Code § 58.1-1502 on a non-resident owner of a large private aircraft hangared at Washington National Airport (National Airport), which is a federal enclave.

The facts of the case are not in dispute. Charles E. Smith Management, Inc. (CES) is a District of Columbia corporation with its principal place of business in Arlington County. Since 1990, CES has hangared and maintained an aircraft at National Airport. The purchase of the aircraft and all other transactions related thereto occurred outside the Commonwealth.

On March 4, 1991, the Department of Taxation of the Commonwealth of Virginia (the Department) assessed against CES an aircraft use tax of $300,000, a $75,000 penalty, and $34,084.93 in interest pursuant to Code § 58.1-1502. On March 20, 1991, exercising its right pursuant to Code § 58.1-1821, CES protested the assessment. On June 29, 1992, the Tax Commissioner ruled the assessment valid.

Thereafter, under protest, CES paid the assessment, penalty, and accrued interest. On November 2, 1993, CES filed an "Application for Correction of Erroneous and Improper Assessments of State Taxes" in the circuit court pursuant to Code § 58.1-1825

_et_ _seq._ CES asserted that the Commonwealth was without power to assess a use tax on aircraft hangared at National Airport and owned by nonresidents because the airport is a federal enclave ceded to the United States by the Commonwealth under the Act of Cession, Code § 7.1-10. Recognizing that subsequent enactments of the federal government had returned certain powers of sovereignty to the Commonwealth, CES further asserted that none of these powers permitted the assessment of the tax authorized by Code § 58.1-1502.

The Department filed a motion for summary judgment on August 16, 1994, and CES filed a cross-motion for summary judgment on September 1, 1994. The issues were briefed and the trial court heard oral argument. On November 21, 1994, the trial court granted the Department's motion for summary judgment on the ground that aircraft hangared at National Airport are subject to licensure by the Commonwealth pursuant to Code § 5.1-5, and thus to assessment for taxation pursuant to Code § 58.1-1502. We awarded this appeal to review the action of the trial court.

Code § 58.1-1502 levies a tax on "the use in the Commonwealth of any aircraft required to be licensed by the Department of Aviation pursuant to [Code] § 5.1-5." In pertinent part, Code § 5.1-5(a) requires that "every nonresident owning a civil aircraft based in this Commonwealth over sixty days during any twelve-month period. . . shall, before the same is operated in this Commonwealth, obtain from the Department [of Aviation] an aircraft license for such aircraft."

CES apparently and appropriately recognizes that the

Commonwealth has the power to enact a use tax on aircraft based at National Airport.  See Commonwealth v. United Airlines, Inc., 219 Va. 374, 387–92, 248 S.E.2d 124, 131–34 (1978) (holding that Commonwealth may assess use and sales taxes on personal property based at National Airport).

However, since the Commonwealth conditioned such tax liability on an aircraft being "required to be licensed by the Department of Aviation pursuant to [Code] § 5.1–5," CES contends that it is not liable for the tax because the Commonwealth has no power to license aircraft based at National Airport.  CES bases this contention on the claim that the power to license aircraft was not retroceded to the Commonwealth by the Metropolitan Washington Airports Act of 1986 (the 1986 Act).[1]

In response, the Department contends that the Commonwealth's right to require licensure of aircraft based at National Airport

---

[1]In pertinent part, the 1986 Act provides:

> The Commonwealth of Virginia shall have concurrent police power authority over the Metropolitan Washington Airports, and the courts of the Commonwealth of Virginia may exercise jurisdiction over Washington National Airport.

Public L. No. 99–591, § 6009(c), 100 Stat. 3341–387 (codified at 49 U.S.C. App. § 2458(c)).

In accepting this grant of concurrent police power authority, the General Assembly provided:

> The Commonwealth hereby grants, accepts and agrees to concurrent police power authority over the Metropolitan Washington Airports as provided in § 6009(c) of the Metropolitan Washington Airports Act of 1986.

Acts 1987, ch. 665 § 7(A).

is a part of the police power that was retroceded to the Commonwealth in the 1986 Act. Thus, we must decide whether the Commonwealth's licensure of aircraft based at National Airport is a valid exercise of the police power retroceded to it in the 1986 Act.

To decide this issue, we consider the scope of the police power retroceded in the 1986 Act. Although CES claims that this power is limited to "public safety, crime and law enforcement" and "increasing safety and security," we did not so limit it in Singleton v. International Ass'n of Machinists, 240 Va. 403, 397 S.E.2d 856 (1990). There, we held that under its concurrent police power, Virginia courts could enforce Virginia's right-to-work laws as those laws pertain to private employment contracts at National Airport. Id. at 407, 397 S.E.2d at 859. And we think that the licensure of aircraft is clearly an exercise of the Commonwealth's police power. See C.I.T. Corp. v. W.J. Crosby & Co., 175 Va. 16, 21–22, 7 S.E.2d 107, 109–110 (1940)(licensure of nonresident's motor vehicle authorized under police power); Board of Aeronautics v. Sims, 41 S.E.2d 506, 509 (W. Va. 1947) (regulation of aviation part of state's police power).

Accordingly, we conclude that the Commonwealth, exercising its police power retroceded in the 1986 Act, could require aircraft hangared at National Airport to be licensed pursuant to Code § 5.1-5.[2] Thus, CES's aircraft was taxable pursuant to Code

---

[2] We find no merit in CES's argument that its aircraft was not "based in this Commonwealth," Code § 5.1-5, when it was hangared at National Airport. Nor do we agree that Code § 58.1-1502 "masquerade[s] as a police power regulation" because a tax is assessed only on those airplanes subject to Code § 5.1-

§ 58.1-1502.

For these reasons, the judgment of the circuit court will be affirmed.

<u>Affirmed</u>.